UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CRISTOBAL SANTANA, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 24-3246 |
| ) | |
| WILLIAM SMITH, et al., ) | |
|     Defendants. ) | |

## ORDER

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court for screening is a Complaint (Doc. 1) filed by *pro se* Plaintiff Cristobal Santana.

### I.   SCREENING STANDARD

The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing the complaint, the court accepts the factual allegations as accurate, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

## II.   FACTS ALLEGED

Plaintiff complains of events that occurred while he was a pretrial detainee at the Sangamon County Jail ("the Jail"), from November 2023 to present. His Complaint names William Smith, Advanced Correctional Healthcare, and Doe correctional and healthcare employees who worked under Smith and Advanced Correctional Healthcare as Defendants.

Plaintiff alleges that, on or about October 25, 2023, he suffered two broken legs, resulting in five surgeries and rendering him unable to walk or bend his knees. Plaintiff was bedridden, and doctors and specialists at Springfield Memorial Hospital ordered him to have round-the-clock care.

On November 8, 2023, Plaintiff was transferred from the hospital to the Jail's medical unit, where he remained bedridden. Plaintiff was housed in the medical unit from November 2023 to April 2024. Plaintiff was totally reliant on Doe Defendants for all of his basic needs, including water, bathroom use, bathing, and dressing and bedding changes.

Plaintiff alleges that Defendant Smith issued an order requiring that two correctional officers be present during any and all staff interactions (medical or otherwise) with Plaintiff. Plaintiff alleges that Defendant Smith knew that this order would impede Plaintiff's care, due to staff shortages and availability issues as the medical unit only had one correctional officer stationed in it at a given time. Plaintiff further alleges the order made no sense because Plaintiff was bedridden and could not even walk.

In addition, shortly after Plaintiff's arrival at the Jail, Doe Defendants ceased Plaintiff's prescription pain medication, Tramadol, and substituted an ineffective pain medication. The change in medication was allegedly due to Jail policy. Plaintiff alleges he was in excruciating pain and that the change in medication was unnecessary for security reasons because he was bedridden and confined to the medical unit where nurses would watch him to ensure that he ingested any and all medication he received.

In addition, Plaintiff alleges that Doe Defendants frequently ignored or refused to assist him with basic needs, despite Plaintiff being wholly dependent upon them for his care. Specifically, Plaintiff alleges Doe Defendants regularly did not refill his drinking water, leaving him dehydrated and suffering from sharp pains in his left kidney. The Doe Defendants also frequently ignored or refused to assist Plaintiff with toileting needs, causing Plaintiff to hold his bladder or bowels for hours or to attempt to use the portable toilet without assistance. On occasion, Plaintiff urinated on himself or spilled the urinal in his bed, after which he was also ignored and left to lay in his own urine for hours. Plaintiff also fell when attempting to use the toilet by himself because Doe Defendants did not respond to his request for assistance. Plaintiff alleges Doe Defendants did not empty his toilet for days, leaving him exposed to feces, and Defendants often left Plaintiff in filthy bedding for weeks at a time, causing him to develop rashes and bed sores.

Plaintiff alleges both that the Doe Defendants were deliberately indifferent to his need for basic care and that their acts were the natural result of the policy set by Defendant Smith, requiring two correctional staff members to be present during any medical staff interaction with Plaintiff.

On or about January 17, 2024, Defendant Smith and other staff placed Plaintiff in the Jail's psychiatric observation cell, which was covered in feces and urine stains and odors and contained no mattress. Despite Plaintiff's medical issues with his legs, he was forced to sleep on concrete for days. Plaintiff was held in that cell for seven days before being returned to the Jail's medical unit.

Plaintiff was released from the Jail's medical unit to the general population in April 2024. At that time, Plaintiff was not allowed his crutches, even though doctors had ordered Plaintiff not to bear any weight on his legs without assistance and the shower stalls in general population had no chair or safety rails.

By May 2024, Plaintiff's specialist doctor determined that he required daily physical therapy. However, during the month of May, Doe Defendants failed to provide Plaintiff with physical therapy on 12 occasions. In June 2024, Defendants failed to provide Plaintiff's daily physical therapy on 19 occasions. Plaintiff alleges that the same trends continued in July and August 2024.

### III. ANALYSIS

Based on the Court's review, the facts alleged in Plaintiff's Complaint are sufficient to state a Fourteenth Amendment claim for unreasonable medical care against Defendants Smith and Does. *See McGee v. Parsano*, 55 F.4th 563, 569 (7th Cir. 2022), *citing Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (Fourteenth Amendment's Due Process clause governs medical care claims of detainees in jail).

"In the case of those responsible for setting policy, liability will result from the institution of a 'policy that, when enforced, causes a constitutional deprivation.'"

*Childress v. Walker*, 787 F.3d 433, 440 (7th Cir. 2015), *quoting Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir. 2000)). Here, Plaintiff has adequately alleged that Defendant Smith set policies that, when enforced, caused Plaintiff constitutional deprivations in the form of inadequate water, toileting assistance, and hygiene.

Plaintiff has also alleged sufficient facts to support a claim of unreasonable medical care against Doe Defendants who knew that Plaintiff was bedridden with two broken legs and required constant care but did not provide him with water, assistance with using the toilet or changing/cleaning his sheets, necessary pain medication or, later, daily physical therapy and walking assistance devices. *See, e.g., Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (A doctor's "refus[al] to take instructions from a specialist" may constitute evidence that the doctor knew their treatment decisions created a serious risk to an inmate's health.).

In addition, Plaintiff states a claim for unconstitutional conditions of confinement against Defendants Smith and the Doe Defendants, for lack of access to water, exposure to feces and urine for extended periods of time, and placement in a cell where he was forced to sleep on concrete despite having recently broken his legs. *Hardeman v. Curran*, 933 F.3d 816, 822-24 (7th Cir. 2019) (plaintiff states a plausible claim for unconstitutional conditions of pretrial confinement when the alleged conditions are objectively unreasonable and excessive in relation to any legitimate non-punitive purpose, discussing the right to water for drinking and personal sanitation and to live in an environment free of accumulated human waste); *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999) ("condition[s] may amount to punishment if prison officials are deliberately

indifferent to a substantial risk to the detainee's [health or] safety").

Plaintiff does not state any claim against the owners of Advanced Correctional Healthcare. There is no vicarious liability under § 1983 solely based upon an employer or supervisory relationship. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 692 (1978); *Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017).

However, because Plaintiff seeks to sue Doe Defendants who are both correctional staff and medical staff, the Court will add the Jail Superintendent Larry Beck, in his official capacity only for the purpose of assisting Plaintiff in identifying the Doe correctional Defendants, and the Court will allow Advanced Correctional Healthcare to remain as a Defendant for the sole purpose of assisting in identifying the Doe Medical Defendants. The Court will provide Plaintiff with further directions and deadlines regarding the identification of the Doe Defendants in a Scheduling Order. After the Doe Defendants are identified, Defendants Beck and Advanced Correctional Healthcare will be dismissed from this suit.

**IT IS THEREFORE ORDERED:**

1) **According to the Court's Merit Review screening of Plaintiff's Complaint under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with Fourteenth Amendment claims of unreasonable medical care and unreasonable conditions of confinement against Defendant Smith and John Doe Defendants. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

2) **The Clerk is directed to add Sangamon County Jail Superintendent Larry Beck in his official capacity only for the purpose of assisting Plaintiff with identifying the Doe correctional Defendants. Defendant Advanced Correctional Healthcare remains in this case only for the purpose of assisting Plaintiff with identifying the Doe medical Defendants.**

3) Plaintiff's Motion for Status [5] is MOOT.

4) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions, to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5) The Court will attempt service on Defendants by mailing a waiver of service. Defendants have sixty days from service to file an Answer. If a Defendant has not filed an Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

6) If a Defendant no longer works at the address Plaintiff provided, the entity for whom the Defendant worked while at that address shall submit to the Clerk Defendant's current work address or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

7) Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver of service. A motion to dismiss is not an Answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an Answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a Defendant files a motion. Therefore, no response to the Answer is necessary or will be considered.

8) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendant's counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9) The Court grants Defendants' counsel leave to depose Plaintiff at his place of confinement. Defendants' counsel shall arrange the time for the deposition.

10) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.

11) If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on that Defendant. Formal service will require the Defendant to pay the associated costs under Federal Rule of Civil Procedure 4(d)(2).

12) The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.

13) The Court directs the Clerk to attempt service on Defendants under the standard procedures.

ENTERED May 23, 2025.

                                              s/ *Colleen R. Lawless*
                                      _____
                                              COLLEEN R. LAWLESS
                                     UNITED STATES DISTRICT JUDGE